# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 15-20078

————

United States Court of Appeals
Fifth Circuit

**FILED**

April 28, 2017

Lyle W. Cayce
Clerk

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff - Appellee

v.

BASS PRO OUTDOOR WORLD, L.L.C.; TRACKER MARINE RETAIL, L.L.C.,

Defendants - Appellants

————

Appeal from the United States District Court
for the Southern District of Texas

————

**ON PETITION FOR REHEARING EN BANC**

Before HIGGINBOTHAM, SOUTHWICK, and HIGGINSON, Circuit Judges.
PER CURIAM:

The court having been polled at the request of one of its members, and a majority of the judges who are in regular active service and not disqualified not having voted in favor (Fed. R. App. P. 35 and 5th Cir. R. 35), the petition for rehearing en banc is DENIED. In the en banc poll, seven judges voted in favor of rehearing (Judges Jolly, Jones, Smith, Clement, Owen, Elrod, and Haynes), and seven judges voted against rehearing (Chief Judge Stewart and Judges Dennis, Prado, Southwick, Graves, Higginson, and Costa). Attached are (1) an opinion dissenting from the denial of rehearing en banc authored by

Judge Jolly, joined by Judges Jones, Smith, Clement, Owen, and Elrod; (2) a responding opinion authored by Judge Higginbotham, joined by Judges Southwick and Higginson; and (3) an opinion dissenting from the denial of rehearing en banc authored by Judge Jones, joined by Judges Smith and Owen.

E. GRADY JOLLY, Circuit Judge, joined by JONES, SMITH, CLEMENT, OWEN, and ELROD, Circuit Judges, dissenting from the denial of rehearing en banc:

In this case of first impression in our circuit, the EEOC seeks to bring a "pattern or practice" case under both § 706 and § 707 of Title VII of the Civil Rights Act, as amended in 1991, asserting the violation of the rights of 50,000 applicants, and the entitlement of each to individualized compensatory and punitive damages. With collegial respect, the panel opinion circumvents the Supreme Court precedent in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), dismisses our precedent in *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998), downplays critical manageability concerns, brushes away the complications of the Seventh Amendment, and excuses the statutory limitations of § 707—resulting in an expansion of the litigation powers of the EEOC beyond the precedents of this Court and the Act. Our Court, in a tie vote, has denied en banc consideration. I respectfully dissent.[1]

## I.

First, what this dispute with the panel opinion is *not* about. The dispute does not challenge the right of the EEOC to bring this mass "pattern or practice" suit under § 707. And it casts no doubt on the panel's finding that the EEOC's conciliation efforts were sufficient to meet the administrative prerequisites for bringing such a § 707 "pattern or practice" action. What is challenged is that the EEOC may maintain an action in *this* "pattern or practice" case under both or either § 706 or § 707 in order to claim individualized punitive and compensatory damages for each of the 50,000 persons making up the mass.

---

[1] The panel has found it necessary to bolster its opinion with sixteen pages of dicta in response to this dissent. This dissent is only to the panel opinion, the only precedent at issue. I do note, however, that the response seems unusually defensive to a challenge of the merits of the underlying opinion.

## II.

The few relevant background facts to this appeal are as follows. As noted, there are around 50,000 alleged individual discriminatees on whose behalf the EEOC seeks to obtain compensatory and punitive damages. The "50,000" number is asserted in shotgun fashion, with no development or refinement of who or where the individuals are. Fifty thousand African-Americans and Hispanics unsuccessfully applied to Bass Pro nationwide over a ten-year period, the EEOC reasons, and thus, automatically, 50,000 people are said to be victims of individualized injuries, entitled to compensatory and punitive damages in one mass action.[2]

The EEOC, after a three-year investigation, could identify *zero* discriminatees or even potential discriminatees. Upon being pressed by the district court, the EEOC identified about 100, and later, about 200, of the 50,000 mass. In the course of the investigation, Bass Pro produced some 230,000 pages of documents. The EEOC conducted extensive interviews. Still, the EEOC identified only 200 discriminatees to the district court.

The district court, after halts and starts, allowed the EEOC to file a "pattern or practice" claim on behalf of the 50,000 claimants under § 706 of the Civil Rights Act seeking individualized compensatory and punitive damages. This interlocutory appeal followed. The panel affirmed.

---

[2] The 50,000 number is not hyperbole. The EEOC specifically estimated that it believed there were more than 50,000 unsuccessful Black and Hispanic applicants between 2005 and 2012, and argued, correctly, that "all Black and Hispanic unsuccessful applicants would be presumed victims, and would be the subject of [*Teamsters*] Stage II proceedings concerning relief." And, as the EEOC acknowledges, there is no reason for it to attempt to identify all of the individual class members it intends to bring to trial until Stage II of the litigation. *See* Appellee's Brief, 2015 WL 5112409 at *38 ("The Commission does not dispute its obligation to name individual victims for whom it seeks compensatory damages at the relief stage.").

III.

The Civil Rights Act of 1964 provides two methods pursuant to which the EEOC may file suit to remedy violations of the Act. First, the EEOC may bring an action under § 706 of the Act. In a § 706 suit, the Commission must first file a charge of discrimination on behalf of an individual (or individuals) and attempt to conciliate the dispute. If it is unable to do so, the Commission may proceed to file a civil action. *See* 42 U.S.C. § 2000e-5(f)(1).[3] Second, the EEOC may bring a suit under § 707 of the Act. In a § 707 suit, the Commission, after conciliation attempts, may bring a suit against an entity that it believes has engaged in a "pattern or practice" of discrimination. *See* 42 U.S.C. § 2000e-6.[4] Importantly, § 707 contains the words "pattern or practice of [discrimination]"; § 706 does not. And, importantly, in 1991, Congress

---

[3] The Act provides, in relevant part:

If within thirty days after a charge is filed with the Commission . . . the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge.

42 U.S.C. § 2000e-5(f)(1).

[4] The Act provides, in relevant part:

Whenever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in *a pattern or practice* of resistance to the full enjoyment of any of the rights secured by this subchapter, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the Attorney General may bring a civil action in the appropriate district court of the United States . . .

All such actions shall be conducted in accordance with the procedures set forth in [§ 706] of this title.

42 U.S.C. § 2000e-6 (emphasis added). Note that the provision was amended to transfer the functions originally assigned to the Attorney General, namely, filing pattern-or-practice suits, to the EEOC. *See* 42 U.S.C. §§ 2000e-6(c), (d), & (e).

amended § 706 to allow for compensatory and punitive damages, and the correspondent right to a jury trial. *See* 42 U.S.C. § 1981a(a)(1). Congress *did not* correspondingly amend § 707, which, by contrast, only provides for equitable relief when the EEOC is seeking to represent a mass.

## IV.

This appeal presents a case of first impression in this circuit.[5] The EEOC, for the first time, attempts to bring a mass "pattern or practice" claim pursuing the remedies specific to § 706: individual punitive and compensatory damages.

To the simple, underlying point of the several following pages: this "pattern or practice" case cannot be brought under § 706 or § 707 as to provide individualized compensatory and punitive damages for a mass of 50,000 persons. This is so for three reasons. First, the plain language and legislative history of the Civil Rights Act forbid § 706 "pattern or practice" suits, and the panel's contrary holding renders § 707 of the Act a meaningless appendage to Title VII and hence superfluous. Second, allowing pattern-or-practice suits for individualized compensatory and punitive damages poses insurmountable manageability concerns; our Court and the Supreme Court have addressed these concerns before and rejected such suits. Third, allowing pattern-or-practice suits for individualized compensatory and punitive damages for the 50,000 persons necessarily runs afoul of the Seventh Amendment; our Court has addressed these concerns before and held that such suits have prohibitive

---

[5] Only one other circuit appears to have squarely addressed the issue. In *Serrano v. Cintas Corp.*, 699 F.3d 884 (6th Cir. 2012), the Sixth Circuit, like the panel, held that the EEOC could bring a § 706 "pattern or practice" suit seeking compensatory and punitive damages. The Sixth Circuit, however, wholly failed to consider the critical manageability and Seventh Amendment concerns raised by its decision.

constitutional problems. This dissent addresses each of these flaws in the panel opinion in turn.

A.

First, the panel's opinion gives a blind pass to Title VII's statutory framework. In doing so, the panel renders § 707 meaningless and superfluous; the panel merges the two statutes, holding specifically that "the EEOC's Section 706 claim *is* a pattern or practice suit." *Bass Pro*, 826 F.3d at 805. The two statutes are reborn as one by the stroke of a judicial pen.

This boldness relies heavily on the Supreme Court's holding in *General Telephone Co. of the Nw. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 323 (1980), which held that the EEOC may bring a mass litigation without being subject to Rule 23's requirements. The panel relies on *General Telephone's* unwillingness "to subject § 706(f)(1) actions to requirements that might disable the enforcement agency from advancing the public interest in the manner and to the extent contemplated by the statute," *Bass Pro*, 826 F.3d at 800 (citations and quotations omitted), to conclude that the panel must allow the EEOC to pursue a "pattern or practice" action using the *Teamsters* framework[6] under § 706 for compensatory and punitive damages.

---

[6] In *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 358–62 (1977), the Court clarified and explained the burden-shifting framework that applies in "pattern or practice" cases. Under this "*Teamsters*" framework, the plaintiff (here, the EEOC) has the initial burden to prove that the defendant engaged in a pattern or practice of discrimination; the burden then shifts to the defendant to prove, with respect to each individual class member, that equitable relief should be denied because it did not act with discriminatory motives in taking the adverse employment action. *See Allison*, 151 F.3d at 409. These proceedings are generally bifurcated; the EEOC first attempts to meet its initial burden and, if it does, separate proceedings determine the scope of relief for each affected individual. *Id.* at 409–10. *Teamsters* was decided when EEOC claims were tried by a court, not a jury, and only equitable relief, *e.g.*, backpay, reinstatement, hiring, etc., was available.

But both *General Telephone* and *Teamsters* were decided prior to the 1991 amendments to the Act. In 1980, individualized compensatory and punitive damages—and hence jury trials—were wholly unavailable to Title VII claimants, who could only claim equitable relief. The panel argues that Congress must have intended to do what plainly it did not do: incorporate these changes into both § 706 and § 707 because, according to the panel, Congress was "presumed to be aware of" the judicial interpretation, *see Bass Pro*, 826 F.3d at 800 (citations and quotations omitted), that is, that the Supreme Court, in *General Telephone*, had allowed a § 706 mass litigation to proceed without requiring Rule 23 certification. But neither *Teamsters* nor *General Telephone* gave any thought at all to the proper evidentiary framework for "pattern or practice" suits involving jury trials and punitive and compensatory damages.

The far more reliable reading of § 707 is that the "off-hand omission" urged by the panel was an intentional and intelligent choice. The legislative history of the 1991 amendments suggests that Congress did *not* envision the outcome that the panel suggests, and it expected the EEOC to continue, as it always had, pursuing "pattern or practice" claims using the equitable remedies available under § 707.[7] As Senator Robb stated *in support* of the amendments, "[t]he damages section [of § 706] applies to individual cases of intentional discrimination—where the statistical makeup of the workforce is irrelevant." 137 Cong. Rec. S15445-02 (daily ed. Oct. 30, 1991) (statement of Sen. Robb). By necessary implication, in pattern-or-practice claims, where statistical

---

[7] *Compare* 42 U.S.C. § 2000e-6 ("Section 707") (explicitly providing for remedies against those "engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter"), *with* 42 U.S.C. § 2000e-5(f)(1) ("Section 706") (containing no such language). Section 706 contains *not one word* suggesting that it is a proper place for a "pattern or practice" claim under the *Teamsters* framework.

makeup of the workforce *is* relevant, equitable remedies remain the statutorily appropriate relief.[8] *See also* Brief of Amici Curiae Retail Litigation Center, Inc. and Chamber of Commerce of the United States, 2015 WL 3958049 at *10-12 (explaining legislative history of the 1991 amendments). But the panel opinion slides past the statutory language and Congressional intent; the panel is satisfied that because "Congress did not *prohibit* the EEOC from bringing pattern or practice suits under Section 706," *Bass Pro*, 826 F.3d at 800 (emphasis added), it must allow it to do so. In other words, creating a canon of statutory construction, the panel opinion concludes that any conduct or procedural process not specifically addressed in a statutory provision becomes a right afforded by that provision.

Section 707, however, must be afforded some meaning.[9] But under the panel's holding, the EEOC has obviated the need for § 707; it can achieve the same result as well as punitive and compensatory damages by bringing a § 706 claim. Still, the panel advances the notion (in a footnote) that § 707 is at least not *technically* superfluous because private individuals may intervene in a § 706 suit, and because the EEOC may request a three-judge panel in a § 707

---

[8] Such a construction is entirely consistent with the holdings of *Teamsters* and *General Telephone*, both of which concerned only equitable remedies.

[9] Indeed, the notion that § 706 and § 707 are dichotomous with respect to suits brought by the EEOC is hardly a novel proposition. *See, e.g., E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 62 (1984) ("A Commissioner may file a charge in either of two situations. First, when a victim of discrimination is reluctant to file a charge himself because of fear of retaliation, a Commissioner may file a charge on behalf of the victim. [42 U.S.C. § 2000e-5 ('Section 706')]. Second, when a Commissioner has reason to think that an employer has engaged in a 'pattern or practice' of discriminatory conduct, he may file a charge on his own initiative. § 2000e-6(e) ['Section 707'].") ; *Scarlett v. Seaboard Coast Line R. Co.*, 676 F.2d 1043, 1053 (5th Cir. 1982) (recognizing *Teamsters* framework as applicable in "'pattern and practice' suit[s] by the government under section 707" and in "private class action[s]").

suit. *See Bass Pro*, 826 F.3d at 800 n. 49. Respectfully, it is unrealistic that the EEOC would choose such inconsequential procedural technicalities under § 707, that is, excluding private intervenors and seeking a three-judge panel, to the exclusion of seeking compensatory and punitive damages for victims of discrimination under § 706. In short, the panel opinion will serve as the elegy for § 707.

To be sure, the panel itself acknowledges the canon of statutory construction forbidding rendering a statute superfluous, *see Bass Pro*, 826 F.3d at 800 n. 49 (noting the "longstanding canon of statutory construction that terms in a statute should not be considered so as to render any provision of that statute *meaningless* or superfluous") (citations and quotations omitted) (emphasis added); *see also TRW Inc. v. Andrews*, 534 U.S. 19, 29 (2001) (declining to interpret statute in a way that would "in practical effect" render a provision "superfluous in all but the most unusual circumstances."). Yet the panel does not see itself in the mirror. Indeed, the panel's own words reflect its transgression of this rule of statutory construction when it holds that the "EEOC's Section 706 claim *is* a pattern or practice suit," 826 F.3d at 805, and when it chastises Bass Pro for "assum[ing] that the EEOC's Section 706 claims are distinct from its pattern or practice claims." *Id.* Surely, Congress, its legislative enactments, and statutory construction deserve some respect. Compensatory and punitive damages were actually, in fact, enacted in § 706 claims *but actually, in fact, not enacted* in § 707 pattern-or-practice claims. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174 (2009) ("When Congress amends one statutory provision but not another, it is presumed to have acted intentionally.").

That Congress enacted the right to damages in § 706 suits but not § 707 suits demonstrates that Congress understood that its provisions for punitive

and compensatory damages were not designed for mass "pattern or practice" cases, certainly not those involving 50,000 unnamed plaintiffs. The statute and its legislative history are powerful evidence that Congress expected the EEOC to bring mass "pattern or practice" claims under § 707, *not* § 706. And it expected the EEOC to bring mass "pattern or practice" claims for equitable, not legal, relief.

## B.

Second, the panel's holding poses manageability concerns of such a magnitude that our precedent and Supreme Court precedent have rejected cases that, like this one, seek individualized punitive and compensatory damages for a mass where the due process and Seventh Amendment concerns are overwhelming.

We have reasoned that individual jury trials for compensatory and punitive damages are not a realistic choice in mass actions. In *Allison*, 151 F.3d at 410, we explained that "[b]y injecting jury trials into the Title VII mix, the 1991 Act introduced, in the context of class actions, potential manageability problems with both practical and legal, indeed constitutional, implications." Accordingly, we recognized that private plaintiffs could not seek individualized punitive or compensatory damages in a mass action, such as this one. *Id.* at 418, 420. Similar due process and practicality concerns guided the Supreme Court's decision in *Wal-Mart*. *See Wal-Mart*, 564 U.S. at 367 ("[A] class cannot be certified on the premise that Wal-Mart *will not be entitled to litigate its statutory defenses* to individual claims.") (emphasis added).

Yet the panel confines *Allison* to a footnote, and summarily says such reasoning only applies to trial of Rule 23 cases. *Bass Pro*, 826 F.3d at 802 n. 61. But *Allison* was not concerned only with the strictures of Rule 23. It addressed logistical concerns, the same that are present in *any* mass litigation involving

11

damages tied to the different individual personal injuries of hundreds or thousands of persons (here, 50,000). *Allison* discussed these issues at length, addressing serious concerns with, among other things, the very subject now at issue—a mass litigation for punitive and compensatory damages tried in front of juries through the *Teamsters* framework. *See, e.g., Allison*, 151 F.3d at 419 ("The predominance of individual-specific issues relating to the plaintiffs' claims for compensatory and punitive damages in turn detracts from the superiority of the class action device in resolving these claims"); *id.* ("These manageability problems are exacerbated by the fact that this action must be tried to a jury and involves more than a thousand potential plaintiffs"). These concerns of due process and practicality guided the Supreme Court's decision to deny a mass remedy in *Wal-Mart*. *See Wal-Mart*, 564 U.S. at 367. But the panel dismisses such concerns with a paean to the "able district court." *Bass Pro*, 826 F.3d at 803.

When faced with the prospect that its opinion could lead to many years of unmanageable litigation, the panel suggests that the parties would settle their claims. *See Bass Pro*, 826 F.3d at 803. Such forced settlement, however, is precisely the sort of rationale that we have rejected. *See Allison*, 151 F.3d at 422 n. 17 ("Settlements should reflect the relative merits of the parties' claims, not a surrender to the vageries of an utterly unpredictable and burdensome litigation procedure."); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 746 & n. 22 (5th Cir. 1996) (describing class settlements not based on the relative merits but forced by risk and uncertainty as "judicial blackmail" and collecting authority from other circuits).

In sum, the panel's opinion plainly disregards the precedents of both *Allison* and *Wal-Mart* because both this Court and the Supreme Court have

held that the clear manageability problems constitute practical barriers to such mass tort actions.

C.

Third, the panel's holding compounds the manageability concerns by creating a framework that necessarily runs afoul of the Seventh Amendment.

The Seventh Amendment provides:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, *and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States*, than according to the rules of the common law.

U.S. Const. Amend. VII (emphasis supplied). In other words, the amendment guarantees every litigant, including Bass Pro, the right to defend itself in jury trials against claims of damages.[10] It further guarantees, however, that one jury will never reexamine the findings of another. These two rules together render it impossible to implement the *Teamsters* framework using separate juries for the Stage I and Stage II proceedings, as suggested by the panel opinion. The Stage II juries—again, 1/50th of the alleged discriminatees would amount to 1,000 trials—would inevitably and necessarily reconsider the Stage I jury's findings in their assessment of the employer's defenses that it did not act intentionally with respect to a given employee (as to compensatory injury and amount of damages) and/or with malice or reckless indifference (as to punitive injury and amount of damages). We recognized this constitutional impasse in *Allison*. *See* 151 F.3d at 420 ("[The bifurcated proceedings] in turn increased the probability that successive juries would pass

---

[10] Recall again that it was not until 1991—well after both *Teamsters* and *General Telephone* had been decided—that Congress made compensatory and punitive damages available in *any* Title VII action. Before that, only equitable relief was available, and no jury trial was necessary.

on issues decided by prior ones, introducing potential Seventh Amendment problems."). Based on the constitutionality and manageability concerns, we concluded that a private litigant could not bring a class action in a *Teamsters* "pattern or practice" suit for individualized legal damages using jury trials. *Id.* Again, the only difference in the Seventh Amendment concern between this case and *Allison* is that the plaintiff is the EEOC, not a private plaintiff. But, as explained, that does not make *Allison's* holding and reasoning any less forceful or precedential with respect to Seventh Amendment and manageability concerns in cases requiring a two-jury process.

The panel's attempts to grapple with the Seventh Amendment and other manageability concerns—which, in an idiom of understatement, it describes as "[not] fanciful," *Bass Pro*, 826 F.3d at 802—are ambivalent. The panel declines to dive deep into the practical, legal, and constitutional problems with the EEOC's claim, instead summarily stating that Rule 49(b) will provide the district court with all the tools it needs to sort out these insurmountable manageability problems. Indeed, the panel's best justification for its conclusion that the Seventh Amendment is no barrier to the breadth of the EEOC's case relies on the wings of hope: it would not be "categorically impossible" to manage. *Id.* at 802 (citations and quotations omitted).

Turning to the Rule 49 suggestion, as it relates to punitive damages, the panel suggests that the *Teamsters* Stage I jury assess liability for punitive damages by special interrogatory, asking if the defendant engaged in a pattern or practice of discrimination with "malice or reckless indifference." *Id.* at 802. But the rule established in *Allison* is that "[p]unitive damages cannot be assessed merely upon a finding that the defendant engaged in a pattern or practice of discrimination." *Allison,* 151 F.3d at 417. Thus in "pattern or practice" cases, "punitive damages must be determined after proof of liability

14

to individual plaintiffs at the second stage of a pattern or practice case, not upon the mere finding of general liability to the class at the first stage." *Id.* at 418. Further, the panel does not explain how the second jury is to realistically determine an individual's punitive damages award without reconsidering the relevant Stage I jury's findings.[11] Punitive damages, after all, "must be reasonably related to the reprehensibility of the defendant's conduct." *Id.* at 417; *see also Smith v. Texaco, Inc.*, 263 F.3d 394, 415 (5th Cir. 2001), *opinion withdrawn after settlement*, 281 F.3d 477 (5th Cir. 2002) ("To meet the requirements of the Seventh Amendment, one jury may have to hear all the issues regarding the pattern and practice claim. This same jury would have to determine the quantum of compensatory and punitive damages."); *Hardin v. Caterpillar, Inc.*, 227 F.3d 268, 272 (5th Cir. 2000) ("A jury deciding whether to award punitive damages and their amount responds to the evidence of intentional acts essential here to the underlying finding of liability. But intentional acts span a range of intensity, purpose, and foreseeability, a range that oscillates with the perceived level of emotional injury and its appropriate compensation. . . . We are persuaded of the practical inseparability of the issues of intent, of damages for emotional injury, and of punitive damages in this [employment discrimination] case.").

---

[11] A hypothetical highlights why Stage I jury findings of malice/recklessness will inevitably be up for review or even rejection when it comes to any subsequent plaintiff's trial for punitive damages. Suppose plaintiff Doe was denied hiring at a Bass Pro shop and became a member of EEOC's "class." A Stage I jury has found pattern/practice liability and malice/recklessness with respect to racial hiring. Doe seeks compensatory and punitive damages. Bass Pro asserts he was not hired, not because of the illegal pattern but because he had never held a fishing rod and they were hiring people to sell expensive rods at that store. Doe admits his lack of experience, but says they also snickered at him and his "ethnic" clothing. Jury finds minimum compensatory damages and no punitive damages. Is this consistent with the Stage I findings, and did the jury not have to revisit those findings, contrary to the Seventh Amendment?

As to compensatory damages, the panel seems to realize it is stepping into a morass, saying that "compensatory damages may prove more difficult [than punitive damages] to administer." *Bass Pro*, 826 F.3d at 803. Indeed, the panel appears to make hardly a minimal attempt to overcome the constitutionality and manageability concerns impregnated within individualized claims of compensatory damages, saying that "bifurcation under *Teamsters* may struggle here to slice liability and damage." *Id.* The bottom line resolution that the panel opinion suggests is that the parties will just have to give up and settle the case. *See id.* ("As these constraints take hold in the pretrial process, the EEOC may conclude that its obligation to enforce Title VII is best discharged by not pursuing in this hiring case the relatively nuanced and elusive compensatory damages. At the same time, Bass Pro may decide that its interests are best served by moderating any exposure it may face by constructing workable management processes it would not otherwise be compelled to abide. The full bite of these constraints is not a decision that this court, remote from engagement and effectual record, ought now make."). One could read in these words of the panel opinion that the only outcome of its decision is not litigation, nor a merits decision, but a settlement forced by the impossibility of applying the panel's decision to the facts of this case with the likely result that either the company is extorted, or the true discriminatees are shortchanged, or both.[12]

---

[12] In the response to this dissent, the panel appears to have backed away from its suggestion that compensatory damages may be managed under the *Teamsters* framework. Instead, it speculates that the EEOC will simply abandon its claim to compensatory damages, content to seek only punitive damages and backpay. It then suggests, without citation to any authority, that the single, unbifurcated jury may suggest a "damages multiplier" as its punitive damages award, and that this formula-based punitive damages award will be applied based on the judge's later determination of a backpay award. This approach clearly transgresses the Seventh Amendment. A jury may not delegate its findings on punitive damages to the judge, subject by formula to his determination on backpay; Bass Pro has the

In sum, the cauldron of problems created by the panel opinion is really not its problem, but that of the "able district court." 826 F.3d at 803. But under the panel's decision, the "able district court" is left with only reassuring generalities, a few overly broad suggestions, a suggestion of judicially compelled settlement—which we specifically condemned in *Allison*, 151 F.3d at 422 n. 17—and an undertone of "Trial by Formula"—which the Supreme Court specifically condemned in *Wal-Mart*, 564 U.S. at 367.

## V.

I respectfully submit that the panel opinion is in conflict with decisions of this Court and the United States Supreme Court and that en banc consideration is necessary to resolve these conflicts. I regret that a majority of this Court failed to vote for en banc consideration, and therefore respectfully dissent from denial of en banc review.

---

constitutional right to have a jury determine the actual amount of any award of punitive damages. *See Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1202–06 (10th Cir. 2012) (reasoning that "the Seventh Amendment protects [the] right to have a jury determine the amount of a punitive damage award"). Nor may Bass Pro be subject to a "Trial by Formula," *see Wal-Mart*, 564 U.S. at 367, wholly unable to present defenses to punitive damages with respect to each individual claimant. Indeed, *Allison* specifically rejected such an approach: "punitive damages are also non-incidental—requiring proof of how discrimination was inflicted *on each plaintiff*, introducing new and substantial legal and factual issues, and *not being capable of computation by reference to objective standards*." *Allison*, 151 F.3d at 418 (emphasis added).

PATRICK E. HIGGINBOTHAM, Circuit Judge, on behalf of the panel, responding to the dissent from denial of rehearing en banc:

Ignoring the independent role of the EEOC when it sues on behalf of the United States government, Bass Pro asks us to hold as a matter of law that damages authorized by the 1991 amendments to the Civil Rights Act can only be recovered in individual suits. That position finds no support in the text of Title VII, its amendments, or the Supreme Court's cases applying them.

The EEOC files fewer than 2% of the suits filed under Title VII of the 1964 Civil Rights Act, leaving the balance to suits by individuals to whom it grants a right to sue when its conciliation efforts fail.[1] Its charge is pursuit of systemic and embedded practices violative of the Act. Before the 1991 amendments, it pursued these systemic violations with suits seeking remedies calculated to avoid the chill of white jurors, such as awards of back pay. Proof of intentional discrimination conformed to its duty to prove that the violations were not discrete or episodic, but were employer practice across a range such as hiring or promotion. At the same time, suits by individuals proceeded with a judicially crafted minuet that focused upon discrete and episodic decisions the individuals complained of. Both were modes of proof of intentional discrimination. With the 1991 amendments, Congress gave to the EEOC the power to wield additional remedies.[2] It added compensatory damages, and for intentional discrimination proved to be in willful and reckless violation of the law, punitive damages.[3]

In this suit filed by the EEOC, not by individuals, Bass Pro seeks to escape the reach of the damages provision of the 1991 amendments. It argues

---

[1] *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 290 n.7 (2002).
[2] Civil Rights Act of 1991, Pub. L. No. 102-166, § 2(1), 105 Stat. 1071.
[3] 42 U.S.C. § 1981a(a)(1).

that pattern-or-practice proof must be limited to the equitable remedies such as injunctions or back pay—that is, that punitive and compensatory damages may be awarded only in trials by individuals before separate juries. Its conclusion, pointing to class actions under the federal rules, is that such a process with the hundreds of persons injured by any found pattern or practice cannot be managed. Hence, the argument goes, Congress cannot have intended that the remedies of the 1991 amendments be available in "pattern-or-practice suits."

As we will explain, this bold definition of an anemic EEOC is deeply flawed. Its core premise, that the EEOC's power to enforce the 1991 amendments is derivative of individual victims, has been thrice rejected by the Supreme Court. And its effort to treat "pattern or practice" as a distinct claim rather than a mode of proving intent is a transparent side-stepping of this precedent.

## I.

Bass Pro's argument rests upon a fundamental premise: that the EEOC's enforcement authority and choice of remedies is tethered to the individuals for whose benefit it seeks relief. That premise is false.

The Supreme Court has repeatedly been confronted with requests by employers to constrain the EEOC's authority in ways not unlike Bass Pro's present request. In *Occidental Life Insurance Company of California v. EEOC*, an alleged discriminator argued that because the EEOC's authority to file suit is derivative of the rights of discrimination victims, the EEOC's ability to file suit should be constrained by the state statute of limitations that would have applied had the individual herself filed suit.[4] Not so, the Court said; "the EEOC

_____

[4] 432 U.S. 355, 366-67 (1977).

does not function simply as a vehicle for conducting litigation on behalf of private parties," and no strict time limitation outside of Title VII applies to it.[5] In *General Telephone Company of the Northwest v. EEOC*, an alleged discriminator argued that when the EEOC brings an action attacking a company-wide policy or practice of discrimination in violation of Title VII, it must comply with Federal Rule of Civil Procedure 23 governing class actions.[6] Not so, the Court said; "the EEOC need look no further than § 706 for its authority to bring suit in its own name for the purpose, among others, of securing relief for a group of aggrieved individuals. Its authority to bring such actions is in no way dependent upon Rule 23."[7]

> [T]he EEOC is not merely a proxy for the victims of discrimination[,] and [] the EEOC's enforcement suits should not be considered representative actions . . . . When the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination.[8]

The Court explained that it was "[a]gainst the backdrop of [its] decisions in *Occidental* and *General Telephone* [that] Congress expanded the remedies available in EEOC enforcement actions in 1991 to include compensatory and punitive damages."[9] Employers again challenged the independent role of the

---

[5] *Id.* at 368-72.

[6] 446 U.S. 318, 320 (1980).

[7] *Id.* at 324. The Court also noted: "Of course, Title VII defendants do not welcome the prospect of backpay liability; but the law provides for such liability and the EEOC's authority to sue for it." *Id.*

[8] *Id.* at 326.

[9] *Waffle House*, 534 U.S. at 288. The dissent hand-waives the force of this inference by stating dismissively that "both *General Telephone* and *Teamsters* were decided prior to the 1991 amendments to the Act," *see infra*. That ignores the well-settled canon of interpretation that we presume Congress to be aware of judicial interpretation when it enacts legislation, *see Lorillard v. Pons*, 434 U.S. 575, 580 (1978)—a principle that by this statement the Supreme Court placed significant emphasis on with respect to the 1991 civil rights amendments.

EEOC. In *EEOC v. Waffle House*, an alleged discriminator argued that an arbitration agreement signed by a discrimination victim precluded the EEOC from judicially pursuing relief on behalf of that individual.[10] Not so, the Court said:

> [P]ursuant to Title VII . . . , whenever the EEOC chooses from among the many charges filed each year to bring an enforcement action in a particular case, the agency may be seeking to vindicate a public interest, not simply provide make-whole relief for the employee, even when it pursues entirely victim-specific relief. . . . [T]he EEOC does not stand in the employee's shoes.[11]

Accordingly, no arbitration agreement stands in the way of the EEOC when it files suit in its own name to enforce the law.[12] In reaching this conclusion, the Court viewed the contention as a challenge to the EEOC's authority to identify the embedded and large practices in seeking punitive damages, not as the award of an individual, but in vindication of all the victims of the practice: "[p]unitive damages may often have a greater impact on the behavior of other employers than the threat of an injunction."[13] Further accenting the independence of the EEOC when drawing on its statutory power to sue in its own name, the court referenced the "substantive statutory prerogative of the EEOC to enforce those claims for whatever relief and in whatever forum the EEOC sees fit."[14]

Drawing upon this principle of the independence of the EEOC, this circuit and others have held that the EEOC is free from still other constraints that would otherwise burden private litigants. In *EEOC v. Board of*

---

[10] *Waffle House*, 534 U.S. at 282-84.
[11] *Id.* at 296-97.
[12] *Id.* at 297-98.
[13] *Id.* at 295.
[14] *Id.* at 295 n.10.

*Supervisors for the University of Louisiana System*, we held that the Eleventh Amendment did not protect the University of Louisiana from a lawsuit by the EEOC because "sovereign immunity under the Eleventh Amendment operates only to protect States form *private lawsuits*—not from lawsuits by the federal government."[15] Relying on *Waffle House*, the court noted that "the Supreme Court, albeit in a different context, has recognized that the EEOC plays an independent public interest role that allows it to seek victim-specific relief—even when such relief could not be pursued by the employee."[16] In *EEOC v. Sidley Austin LLP*, the Seventh Circuit held that the EEOC could seek relief on behalf of individuals even though those individuals had failed to timely file administrative charges on their own behalf.[17] That court noted that it had previously held the opposite, but that *Waffle House* had the effect of overturning that prior decision.[18] As Judge Posner explained, *Waffle House* controlled because it established that the EEOC's "enforcement authority is not derivative of the legal rights of individuals even when it is seeking to make them whole."[19]

Also part of the "backdrop" against which the 1991 civil rights amendments were passed was the Supreme Court's decision that aggregated complaining parties suing under § 706 of the Civil Rights Act could use a modified burden-shifting approach, different from that the Court had announced in *McDonnell Douglas*.[20] This new approach would come to be known later as the "pattern or practice method of proof."

---

[15] 559 F.3d 270, 272 (5th Cir. 2009).
[16] *Id.* at 273.
[17] 437 F.3d 695, 695 (7th Cir. 2006).
[18] *Id.*
[19] *Id.*
[20] *See infra*, notes 35-38 and accompanying text.

Nonetheless, Bass Pro brings us yet another challenge intended to limit the enforcement authority of the EEOC. Like the employers before it, it does "not welcome the prospect of [] liability."[21] But the response is the same: if the conduct is there, "the law provides for such liability and the EEOC's authority to sue for it."[22] This time, we are faced with the argument that when the EEOC intends to use the *Franks–Teamsters*, or "pattern or practice," method of proof, it cannot seek the types of damages that the 1991 civil rights amendments authorized it to seek—compensatory and punitive damages. Bass Pro's argument in support of this position runs along two broad lines, both of which depend on the underlying premise, that the EEOC's enforcement power is derivative of individuals, here refuted: first, that the text of Title VII does not authorize the use of the pattern-or-practice model in connection with compensatory and punitive damages; and second, that even if it did, such a case could not be constitutionally managed. Neither persuades.

## II.

First, Bass Pro seeks support in the structure and language of the statutes authorizing the EEOC to file lawsuits, which as we will explain, when fully stated is not its friend. We begin with a brief history of the Civil Rights Act.

In 1964, Congress passed the Civil Rights Act, prohibiting employers from discriminating on the basis of race, color, religion, sex, or national origin.[23] Section 705 of the Act created the EEOC,[24] and § 706 gave the EEOC some enforcement powers, but those enforcement powers included only the

---

[21] *See General Telephone*, 446 U.S. at 324.

[22] *See id.*

[23] Civil Rights Act of 1964, Pub. L. No. 88-352, 78 Stat. 255 (codified as amended at 42 U.S.C. § 2000e-2(a)(1)).

[24] *Id.*, 78 Stat. 258 (codified as amended at 42 U.S.C. § 2000e-5(a)).

informal methods of "conference, conciliation, and persuasion," not the power to sue.[25] Under the original version of § 706, only "the person claiming to be aggrieved" could sue.[26] Simultaneously, responding to embedded practices of discrimination, Congress in § 707 of the Act authorized the Attorney General to file a lawsuit against "any person or group of persons [] engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by [Title VII]."[27] Eight years later, in 1972, Congress determined that failing to give the EEOC meaningful enforcement powers was a major flaw in the operation of Title VII.[28] It remedied that flaw in two ways. First, it added to § 706's grant of EEOC enforcement powers the power to sue.[29] Second, it transferred § 707's power to attack embedded systemic discrimination from the Attorney General to the EEOC.[30] In 1977, the Supreme Court decided *Occidental*, then in 1980 decided *General Telephone*, both discussed above, and both emphasizing the independence of the EEOC as an enforcement agency.[31] In 1991, "[a]gainst the back drop of . . . *Occidental* and *General Telephone*,"[32] Congress amended the Civil Rights Act to add the availability of compensatory and punitive damages to "the complaining party under Section 706" in cases of intentional discrimination.[33] "Complaining party" was defined as "the [EEOC],

---

[25] *Id.*, 78 Stat. 258-59 (codified as amended at 42 U.S.C. § 2000e-4(a)-(b)).

[26] *Id.*, 78 Stat. 260 (codified as amended at 42 U.S.C. § 2000e-5(f)(1)).

[27] *Id.*, 78 Stat. 261 (codified as amended at 42 U.S.C. § 2000e-6(a)).

[28] *General Telephone*, 446 U.S. at 325 (quoting S. Rep. No. 92-415, p. 4 (1971)).

[29] Civil Rights Act of 1972, Pub. L. No. 92-261, 86 Stat. 105 (codified as amended at 42 U.S.C. § 2000e-5(f)(1)).

[30] *Id.*, 86 Stat. 107 (codified as amended at 42 U.S.C. § 2000e-6(c)).

[31] *See supra* notes 4-8 and accompanying text.

[32] *Waffle House*, 534 U.S. at 288

[33] Civil Rights Acts of 1991, Pub. L. No. 102-166, 105 Stat. 1071 (codified at 42 U.S.C. § 1981a(a)(1)).

the Attorney General, or a person who may bring an action or proceeding under title VII."[34]

The dissent says that "[§] 706 contains *not one word* suggesting that it is a proper place for a 'pattern or practice' claim," *see infra*. This ignores the history of Title VII and allocation of the power at issue. The power to attack deeply embedded racial discrimination practices has always been reserved for the federal government, first to the Attorney General, then transferred to the EEOC. The EEOC already had this power and duty when the 1991 amendment specifically granted it the ability to recover compensatory and punitive damages as a complainant; these remedies were supplied *to* the EEOC *as* the EEOC. That is, long before the 1991 amendment, the EEOC had the power to strike at patterns and practices of discrimination; this amendment only added remedies.

Bass Pro rests its textual argument on its observation that "§ 707 contains the words 'pattern or practice of [discrimination]'; § 706 does not." Thus, it reasons, when Congress added the availability of compensatory and punitive damages to lawsuits brought under § 706, it must have meant to preclude recovery of those types of damages when the EEOC utilizes the *Franks–Teamsters* method of proof, which is sometimes called the pattern-or-practice method. This argument, wholly embraced by the dissent, improperly conflates "pattern or practice" as it is used in § 707 with "pattern or practice" as it is used to describe the *Franks–Teamsters* method for structuring evidence of intentional discrimination, confounding the description of the targeted evil with the necessary model deployed to prove intent.

---

[34] 42 U.S.C. § 1981a(d)(1).

One need look no further than the genesis of the *Franks–Teamsters* method of proof to understand the fallacy in Bass Pro's position. Until 1976, we had only the *McDonnell Douglas* burden-shifting standard for structuring proof of intentional discrimination in Title VII cases.[35] In 1976, the Court announced an alternative framework in *Franks v. Bowman Transportation Company*.[36] Under this new framework, the plaintiff would bear the initial burden of "demonstrating the existence of a discriminatory hiring pattern and practice" by the employer, then the employer would bear the burden of proving that any given individual "was not in fact discriminatorily refused employment."[37] *Franks* was a private class action brought under § 706.[38] The EEOC was not a plaintiff, and § 707 had no role to play. Yet Bass Pro would have us believe, and the dissent agrees, that this burden-shifting framework for structuring an intentional-discrimination trial is somehow linked to § 707—a statute wholly irrelevant to the case in which the framework was established. That is untenable.

The next year, in *Teamsters*, the Court approved of the deploy by the EEOC of the *Franks* model of proof.[39] In doing so, the Court carefully observed that "[t]he 'pattern or practice' language in § 707(a) of Title VII . . . was not intended as a term of art."[40] This has led courts, including the dissent, to refer to the method of proof established by *Franks* as the "*Teamsters* framework" or

---

[35] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[36] 424 U.S. 747 (1976).

[37] *Id.* at 772-73 & n.32.

[38] *Id.* at 750-51.

[39] *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358-60 (1977).

[40] *Id.* at 336 n.16.

the "*Teamsters* method of proof."[41] But as the Supreme Court itself has said, *Franks* is the true origin of the model of proof, not *Teamsters*.[42]

Because of this *Teamsters* case, some courts, commentators, and litigants have come to describe actions brought by the EEOC under § 707 and making use of the *Franks–Teamsters* burden-shifting framework as "pattern-or-practice claims." But "pattern or practice" is not a freestanding cause of action, it is a method of proving a claim of intentional discrimination.[43] The dissent commits exactly this error, claiming "[§] 707 contains *not one word* suggesting that it is a proper place for a 'pattern or practice claim' under the *Teamsters* framework," *see infra* n.6, and "[c]ompensatory and punitive damages were actually, in fact, enacted in § 706 claims *but actually, in fact, not enacted* in § 707 pattern-or-practice claims," *see infra.* And this association gives rise to the intuitive, but false, conceptual link between the "pattern or practice" method of proof and the similar language in § 707. But there is no such link. The Supreme Court has reaffirmed multiple times, including recently, that the pattern-or-practice method of proof is not limited to EEOC actions under § 707.[44] This authority directly contradicts the position advanced by Bass Pro, urging us to limit the EEOC's use of the *Franks–Teamsters* method of proof to actions brought under § 707. However, once the language of § 707 is properly de-linked from the name that we use out of convenience to refer to the trial

---

[41] *See, e.g.*, *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 177 (3d Cir. 2009).

[42] *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 875-76 (1984).

[43] *See Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 149 n.8 (2d Cir. 2012) ("Although the *Teamsters* framework is not a freestanding cause of action, courts—including the Supreme Court—sometimes loosely refer to the *Teamsters* method of proof as a 'pattern-or-practice claim.'" (citation omitted)).

[44] *Cooper*, 467 U.S. at 876 n.9 ("Although *Teamsters* involved an action litigated on the merits by the Government as plaintiff under § 707(a) of the Act, it is plain that the elements of a prima facie pattern-or-practice case are the same in a private class action."); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 352 & n.7 (2011).

structure established by *Franks* and expanded by *Teamsters*, Bass Pro's textual argument cannot hold water. Section 707's use of the non-term-of-art phrase "pattern or practice" does not limit how the EEOC is permitted to exercise its the authority to attack systemic embedded discrimination—a pattern or practice—a necessary means of the attack being the method of proof referred to in shorthand by a similar name.

No canon of statutory interpretation can overcome the force of that logic. Nonetheless, Bass Pro relies heavily on the notion that permitting the EEOC to utilize the *Franks* method of proof when it brings an enforcement action under § 706 would render § 707 superfluous. But that is not so; the two sections differ in two respects. First, private individuals have the right to intervene in § 706 actions, but not § 707 actions.[45] Second, § 707 grants the EEOC the right to trial by three-judge panel, but § 706 does not.[46] Even if these differences were "inconsequential procedural technicalities," any small additional work that separate statutes do is sufficient to satisfy this interpretive canon.[47]

More importantly, the superfluity canon that Bass Pro invokes has less sway here, where "in an effort to ensure that the EEOC could prevent unlawful employment practices, Congress opted to give the EEOC broad and overlapping authority."[48] Particularly in the area of employment discrimination, "legislative enactments . . . have long evinced a general intent to accord parallel or overlapping remedies against discrimination."[49] And the unique history of §§ 706 and 707, which reveals that each section was originally

---

[45] *See* § 706(f)(1).

[46] *See* § 707(b)

[47] *Scheidler v. Nat'l Org. for Women, Inc.*, 547 U.S. 9, 21-22 (2006).

[48] *EEOC v. Mavis Disc. Tire, Inc.*, 129 F. Supp. 3d 90, 108 (S.D.N.Y. 2015) (quoting *EEOC v. Pitre, Inc.*, 908 F. Supp. 2d 1165, 1173 (D.N.M. 2012)).

[49] *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974).

designed with separate enforcement entities in mind before all responsibility was eventually consolidated in the EEOC,[50] further mitigates concerns over the overlap between the two sections. As Senator Harrison Williams, the floor manager of the 1972 amendments, said:

> There will be no difference between the cases that the Attorney General can bring under § 707 as a 'pattern and practice' charge and those which the Commission may bring as a result of yesterday's decision to give the EEOC court enforcement powers. *Frankly, the pattern and practice section becomes a redundancy in the law.*[51]

Bass Pro's attempt to turn the text of §§ 706 and 707 in its favor by equating unequal language and incorrectly invoking a canon of construction does not withstand scrutiny. Here, the EEOC sues under both sections. Congress gave to the EEOC the duty of enforcing both, and that is what the EEOC is doing now. It would be truly perverse to withhold the remedy of punitive damages from the EEOC when it targets discrimination in its most virulent and damaging form: polices intentionally calculated to exclude protected minorities and perpetrated on a large scale.

## III.

Second, Bass Pro argues in the alternative that, even if Congress did grant the EEOC the authority to seek compensatory and punitive damages via the pattern-or-practice model, this grant of authority was unconstitutional. This attack vaguely refers to the principles of Seventh Amendment re-examination and "due process," but offers no specifics. Indeed it cannot because there is no management plan before us to review. Instead Bass Pro must argue

---

[50] *See supra* notes 22-33 and accompanying text.

[51] *EEOC v. Gen. Tel. Co. of the Nw., Inc.*, No. C77-247M, 1977 WL 15420, at *3 (W.D. Wash. Dec. 21, 1977) (citing 118 Cong. Record, p. 4081, February 16, 1972) (emphasis added).

that it would be *impossible* in any case to manageably try, within the constraints of the Constitution, a pattern-or-practice case seeking compensatory or punitive damages. Under this view, the only enforcement mechanism for the 1991 Civil Rights Act amendments is an individual lawsuit. We cannot agree.

Bass Pro's reliance on *Wal-Mart v. Dukes* and *Allison v. Citgo Petroleum* is misplaced.[52] Both were Rule 23 class actions, and those courts' holdings were applications of the substantive standards contained in Rule 23.[53] Rule 23 has no force when the EEOC sues; the Supreme Court held in *General Telephone* that "Rule 23 is not applicable to an enforcement action brought by the EEOC in its own name and pursuant to its authority under § 706 to prevent unlawful employment practices."[54] More importantly, the EEOC's enforcement authority is not tethered to the discrimination victims on whose behalf it seeks relief.[55] This is especially true where, as here, the EEOC seeks to enforce Title VII through punitive damages, which do not compensate individuals but protect the public by deterring future violations.[56] An award of punitive damages under Title VII need not be supported by *any* other kind of damages; those damages stand alone.[57] This principle negates Bass Pro's insistence that any trial plan in this case must keep punitive damages linked to compensatory damages, which insistence also rests on the assumption that the EEOC will

---

[52] 564 U.S. 338 (2011); 151 F.3d 402 (5th Cir. 1998).

[53] *See Wal-Mart*, 564 U.S. at 342 ("We consider whether the certification of the plaintiff class was consistent with Federal Rules of Civil Procedure 23(a) and (b)(2)."); *Allison*, 151 F.3d at 407 ("We therefore affirm and hold that the district court did not abuse its discretion in denying class certification.").

[54] *General Telephone*, 446 U.S. at 323.

[55] *See Waffle House*, 534 U.S. at 287-88; *see also General Telephone*, 446 U.S. at 326.

[56] *Waffle House*, 534 U.S. at 294-95.

[57] *EEOC v. E.I. Du Pont de Nemours & Co.*, 480 F.3d 724, 733-34 (5th Cir. 2007); *Abner v. Kansas City S. R. Co.*, 513 F.3d 154, 160 (5th Cir. 2008).

seek compensatory damages at all. It also ignores the fact that any needed link to awarded damages can here be supplied by back pay awards.[58]

It is not our task to, nor should we, conduct pretrial in the court of appeals. But we reject the notion that this lawsuit cannot be managed and should be shut down at this early stage. Several district courts have entered trial management plans in similar cases where the EEOC has sought aggregated compensatory and punitive relief using the pattern-or-practice model.[59] Yet neither Bass Pro nor the dissent explains why each of those trial plans is unconstitutional.

This effort to confound the entry of a trial plan at this juncture is exposed by the reality that, in addition to the options adopted by those courts, the EEOC may elect from an array of procedures held in the toolkit of district judges. They afford a wide variety of paths available upon remand. There is no dispute that the parties will try the equitable claim for back pay to the court resting upon a finding of systemic discrimination. The EEOC may determine that its charge to enforce Title VII is best served by declining to pursue compensatory damages (similar to the strategy of the private class in *Wal-*

---

[58] *E.I. Du Pont de Nemours*, 480 F.3d at 733-34.

[59] *U.S. Equal Employ't Comm'n v. Foster Wheeler Constructors, Inc.*, No. 98 C 1601, 1999 WL 528200 (N.D. Ill. July 13, 1999); *E.E.O.C. v. Dial Corp.*, 259 F. Supp. 2d 710 (N.D. Ill. 2003); *E.E.O.C. v. Int'l Profit Assocs., Inc.*, No. 01 C 4427, 2007 WL 3120069 (N.D. Ill. Oct. 23, 2007); *E.E.O.C. v. Outback Steak House of Fla., Inc.*, 576 F. Supp. 2d 1202 (D. Colo. 2008); *E.E.O.C. v. McCormick & Schmick's Seafood Rests., Inc.*, No. WMN-08-984, 2008 WL 10697581 (D. Md. 2008); *E.E.O.C. v. Burlington Med. Supplies, Inc.*, 536 F. Supp. 2d 647 (E.D. Va. 2008); *E.E.O.C. v. Sterling Jewelers Inc.*, 788 F. Supp. 2d 83 (W.D.N.Y. 2011); *Equal Employ't Opportunity Comm'n v. JBS USA, LLC*, 8:10CV318, 2011 WL 13137568 (D. Neb. May 31, 2011); *E.E.O.C. v. Pitre, Inc.*, 908 F. Supp. 2d 1165 (D.N.M. 2012); *David v. Signal Int'l, LLC*, 37 F. Supp. 3d 814 (E.D. La. 2013); *E.E.O.C. v. Celadon Trucking Servs., Inc.*, No. 1:12-cv-0275-SEB-TAB, 2013 WL 1701074 (S.D. Ind. April 18, 2013); *E.E.O.C. v. Performance Food Grp., Inc.*, 16 F. Supp. 3d 576 (D. Md. 2014); *U.S. E.E.O.C. v. PMT Corp.*, 124 F. Supp. 3d 904 (D. Minn. 2015); *E.E.O.C. v. Mavis Disc. Tire, Inc.*, 129 F. Supp. 3d 90 (S.D.N.Y. 2015); *E.E.O.C. v. Cintas Corp.*, No.04-40132, 2015 WL 1954476 (E.D. Mich. April 29, 2015).

*Mart*[60]). Given that the back pay case must be tried, the EEOC might seek trial with only one jury.

The EEOC may urge the district court to impanel a single jury to which its pattern-or-practice case will be tried. Turning to its toolkit, the district court, drawing upon F.R.C.P. 49, may present the jury with a series of interrogatories. First, the jury would be asked whether it finds that Bass Pro has engaged in a pattern or practice of discriminating against candidates on the basis of race. Second, the same jury would be asked, only if it answered "yes" to the first question, whether the found pattern or practice was carried out with malice or reckless disregard for the federal rights of those it may have affected within the meaning of § 1981a(b)(1). An answer of "yes" to the second question would decide the EEOC's *eligibility* for a punitive damages award, but it remains within the jury's discretion to make such an award. At this juncture, the jury will have the full picture of the operation and import of any pattern or practice of discrimination.

The EEOC could then request the district court to instruct the jury to determine the appropriate relationship between back pay and any punitive damages it might choose to award; and first to instruct the jury that its found pattern or practice of discrimination may entitle the EEOC to an award of back pay on behalf of some job applicants injured by the pattern or practice, which individuals and amount would be determined later by the court. The EEOC, in its discretion, can distribute any back pay and punitive damages award that it recovers among the victims of the discrimination. With that understanding, the jury could be instructed that, should it elect to award punitive damages, it should state a multiplier to be applied to each individual amount of back pay

---

[60] *Wal-Mart*, 564 U.S. at 345.

to compute the award of punitive damages. For example, the jury may choose to award 1/2x, 1x, 2x, or 3x in punitive damages, with "x" being the amount of back pay. Responsive to any perceived due process constraints, the court could cap the multiplier at 3x or some other appropriate ratio.

This completes the work of the jury. The jury making the punitive damages determination will be keenly familiar with any evidence of how Bass Pro carried out its pattern or practice of hiring discrimination making it well-equipped to determine the EEOC's eligibility for punitive damages and what multiple of each back pay award is sufficient to punish Bass Pro.

Once the jury trial is complete, it will fall to the court to conduct the necessary individualized inquiries, including Bass Pro's defense that any given individual was rejected for employ for reasons other than the found pattern or practice of discrimination. The court must determine, perhaps with the assistance of a special master, the amount of back pay lost by each person denied employ by the found pattern or practice. Once that amount is found, the jury's multiplier is used to calculate the amount of punitive damages recoverable by the EEOC to distribute to the victims of the found systemic discrimination.

This pathway is responsive to Bass Pro's Seventh Amendment concerns; only one jury is ever impaneled, and it decides all of the issues that Bass Pro is entitled to have a jury decide. The court's determination of individualized back pay awards does not re-examine any of that jury's findings; an award of punitive damages is not a "fact" that triggers Seventh Amendment re-examination concerns.[61] And the court considers only each claimant's entitlement to back pay and the amount of any back pay award—not

---

[61] *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 437 (2001).

33

overlapping with the jury's findings. Moreover, Bass Pro is, as it rightly insists, afforded the opportunity to present individualized defenses with respect to each and every individual, satisfying the request of Bass Pro and the command of *Wal-Mart*.[62] This detailing of a possible path the EEOC may urge the district court to follow is an obvious response to the reality that, absent summary judgment, the back pay suit will be tried. There are other paths. For now, the point is: the claim that this suit cannot be tried is not a statement of fact but an advocate's prayer.

****

Seeking to limit its exposure to liability, Bass Pro asks us to shut down this lawsuit before it even gets off the ground. For the reasons described, its statutory argument is flawed, and its manageability argument is unpersuasive and premature.

---

[62] *See Wal-Mart*, 564 U.S. at 367.

EDITH H. JONES, Circuit Judge, joined by SMITH and OWEN, Circuit Judges, dissenting from en banc rehearing:

I fully concur in Judge Jolly's fine dissent from the evenly divided vote to deny rehearing in this important case. I write separately only to observe the uniqueness, at least in this court, of Judge Higginbotham's full throated "response" to Judge Jolly's writing. Lest there be any mistake, the panel's "response" must not be confused with a *binding opinion* on the denial of an en banc petition, because no authority authorizes any such opinion. *See* 28 U.S.C. § 46(c); FRAP 35; Fifth Circuit Local Rule 35. *See Young v. Borders,* 850 F.3d 1274, 1287 (Hull, J., concurring in denial of en banc rehearing) ("[O]rders denying rehearing en banc, even this published one, have no binding or precedential value").

The whole point of the statute authorizing en banc review of a panel opinion is to allow the court's active judges to vote whether to rehear a case. If the panel's new writing here were to be treated as precedential in any way, then not only would either party have the right to seek en banc review of the additional opinion, but we judges could also insist on another en banc poll. That we are not doing so reflects our understanding that the panel has only the right to comment on the dissent from denial, not to articulate *any* additional binding precedent.